UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WICKED GRIPS, LLC,

    Plaintiff,

v.                                        Case No: 8:21-cv-2131-KKM-SPF

HENRY BADAAN, CANDER
TRADE, LLC, BIG CAT GEAR,
LLC, and HB ARMS, INC.,

    Defendants.
_____

## ORDER

Wicked Grips, LLC's Amended Complaint alleges that Henry Badaan, Cander Trade LLC, Big Cat Gear LLC, and HB Arms Inc., used and sold its gun grip designs in violation of copyright law, common law unfair competition, and Florida's Deceptive and Unfair Trade Practices Act (FDUTPA). Defendants move to dismiss all the Counts in the Amended Complaint. The Court concludes that Wicked states a claim for copyright infringement in Count I but dismisses the remaining Counts because the Copyright Act preempts them.

I.  BACKGROUND[1]

Wicked Grips, LLC, is a Michigan-based company that designs and manufactures handgun grips and accessories. (Doc. 40 ¶¶ 2, 11.) Its designs are "meticulously created" and often involve "hand-drawn original designs." (*Id.* ¶ 18.) Though the grips incorporate common imagery like tarot cards, American flags, or spartan helmets, Wicked has re-imagined these images and set them on "unique backdrops, with unique artwork." (*Id.* ¶ 23; Doc. 40-12.) Wicked's principal, Edward Strange, created and rendered the designs with the help of his son Kade Strange. (Doc. 40 ¶ 14.) They did so within the scope of their duties for Wicked. (*Id.*)

Wicked features its gun grips on its website. At Wicked's bidding, an independent contractor created the website's layout, coloring, and coding. (*Id.* ¶ 16.) The contractor incorporated Strange's grip designs, artwork, and wording into the website. (*Id.* ¶¶ 13, 15–16.) After completing the website, the contractor transferred all its rights and ownership of the website to Wicked. (*Id.* ¶ 17.)

Wicked has registered two copyrights with the United States Copyright Office. First, it registered its website. (*Id.* ¶ 12; Doc. 40-1.) Second, Wicked registered its design for the "Death Tarot Card" grip. (Doc. 40 ¶¶ 20–21; Doc. 40-11.)

---

[1] The Court treats the factual allegations in Wicked's Amended Complaint as true and construes them in the light most favorable to Wicked. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

Despite these copyrights, Defendants "fabricated exact likenesses" of Wicked's grip designs and sold them online. (Doc. 40 ¶ 26–27.) Specifically, Cander and Big Cat sold "knock off" grips under various names through numerous websites. (*Id.* ¶¶ 29–30; Doc. 40-14 (Cander listings); Doc. 40-15 (Big Cat listings).) Badaan is the sole owner of Cander and one of two owners of Big Cat, both of which are closely held companies. (Doc. 40 ¶ 31.) As such, Badaan possesses the right and ability to supervise and control Cander and Big Cat. (*Id.* ¶ 32.) Badaan has similar control over HB. (*Id.* ¶ 65.) In February 2020, Badaan ordered a set of Wicked's AR-15 rail covers. (*Id.* ¶ 63.) Just months later, HB began selling duplicate rail covers. (*Id.* ¶¶ 64, 72.)

Defendants' reproductions include nuances, like shading styles, that are specific to Wicked's designs. (*Id.* ¶ 34–35; Doc. 40-13.) Wicked's Amended Complaint attaches sets of side-by-side images to show the similarity between Wicked's grip designs and the designs that Defendants allegedly advertised and sold. (Doc. 40-13).

After discovering their actions, Wicked sent Defendants cease and desist letters. (Doc. 40 ¶ 36; Doc. 40-17.) Even after receiving the letters, Defendants continued "offering the infringing articles for sale." (Doc. 40 ¶ 37.) In response, Wicked filed copyright infringement notices with Amazon.com and eBay.com. Both platforms initially removed Defendants' goods. (*Id.* ¶ 38.) But Defendants continued selling the allegedly

3

infringing designs through their own websites and eventually created new listings on eBay and Amazon. (*Id.* ¶ 39.)

Following these events, Wicked sued Defendants. (Doc. 1.) Its Amended Complaint brings claims for copyright infringement, unfair competition, and violations of FDUTPA. (Doc. 40.) Count I alleges that Badaan, Cander, and Big Cat infringed on Wicked's copyrighted gun grips. Counts II and IV allege that these same Defendants unfairly competed with Wicked and violated FDUTPA by passing off Wicked's designs as if they were Defendants' own. Similarly, Counts III and V allege that Badaan and HB unfairly competed with Wicked and violated FDUTPA by copying and selling Wicked's AR-15 rifle rail covers. Defendants move to dismiss. (Doc. 48; Doc. 50.) Wicked responds in opposition. (Doc. 51.)

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it

4

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

### III.  ANALYSIS

Defendants move to dismiss the Amended Complaint. They argue that Count I fails to state a claim for copyright infringement, that Counts II through V are preempted or fail to state a claim, and that the entire Amended Complaint is a shotgun pleading. Defendants' shotgun pleading argument is meritless and their copyright argument is mistaken, but the Copyright Act preempts Counts II through V.

#### A.  Wicked's Copyright Infringement Claim

The prima facie case of copyright infringement requires (1) ownership of a valid copyright, and (2) copying of a protected element of the work. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The second element is not at issue here.

5

In addition to ownership, the first element requires a plaintiff to allege that it complied with statutory formalities like registration and that the work is original. *See Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996). Defendants argue that Count I must be dismissed because Wicked fails to allege that it owns the website or the grip designs that Defendants allegedly infringed and that it also fails to allege valid copyrights. Because Wicked adequately alleges that it owns a valid and original copyright in the grips designs and that it satisfied the registration precondition to suit, the Court denies Defendants' motion to dismiss Count I.

### 1. Ownership of the Website and Grip Designs

Defendants argue that Wicked Grips cannot maintain a claim for copyright infringement because it is has not alleged that it owns the grip designs. There are three primary ways to acquire ownership of a copyright. Ordinarily, ownership accrues to the author. *See* 17 U.S.C. § 201(a). But when an employee prepares a work within the scope of his employment, the employer is the owner. *See* § 201(b). Finally, the author of a work may transfer ownership of the copyright to another. *See* § 201(d).

The Amended Complaint adequately alleges that Wicked Grips owns the designs and website. To begin, it alleges that Edward Strange, the principal for Wicked, made the grip designs. He did so, the Amended Complaint alleges, in his capacity as an employee and within the scope of his employment. Because it alleges that Strange prepared the grip

6

designs for Wicked as its employee, Wicked has alleged that it owns them. *See Roberts v. Gordy*, 359 F. Supp. 3d 1231, 1243 (S.D. Fla. 2019) (Williams, J.).

As for the website, the Amended Complaint alleges that an independent contractor made the website for Wicked. Defendants point out that, unlike for an employee, a contractor's work is not automatically owned by the hiring party. (Doc. 48 at 9.) Even if so, it does not matter here because the Complaint also alleges that the independent contractor transferred all rights and ownership of the website's copyright to Wicked. Such a transfer is a valid way to acquire copyright ownership. *See Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1531 (11th Cir. 1994). So Wicked has alleged that it owns the website too.

Of course, Wicked may eventually have to prove that it secured the rights to the website and that an employee acting within the scope of his employment designed the grips. *See* 17 U.S.C. § 204(a) (explaining that a transfer must be in writing and signed); *Roberts*, 359 F. Supp. 3d at 1244 (describing the fact-intensive test for scope of employment). But for now, its allegations of ownership are sufficient. *See Magical Mile, Inc. v. Benowitz*, 510 F. Supp. 2d 1085, 1088 (S.D. Fla. 2007) (Huck, J.).

### 2. Registration

"Copyright inheres in authorship and exists whether or not it is ever registered" with the United States Copyright Office. *Drew Homes*, 29 F.3d at 1531. That follows because

7

copyright protection begins "the moment an original idea leaves the mind and finds expression in a tangible medium." *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1301 (11th Cir. 2012) (quotation omitted). Although a copyright exists without registration, the Copyright Act requires it as a prerequisite to a copyright infringement suit. *See* 17 U.S.C. § 411(a); *see also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010) (clarifying that failure to register does not deprive federal courts of jurisdiction).

Defendants argue that Wicked fails to allege that it registered many of its grip designs. Specifically, Defendants point out that Wicked supplies two registration certificates. One states that Wicked registered a website; the other that Wicked registered a grip design based on a death tarot card. Defendants argue that Wicked points to no registration certificate for its numerous other grip designs. Wicked responds that registration is "immaterial" to whether it states an infringement claim for Defendants use of those designs. (Doc. 51 at 4 n.4.)

Although copyright registration is a prerequisite to suit that is appropriately addressed at the motion to dismiss stage, *see Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1341 (11th Cir. 2018), Wicked's allegations and its accompanying certificates sufficiently allege that it satisfies the prerequisites to suit. The Amended Complaint asserts that the website copyright includes the grip designs. (Doc. 40 ¶ 12.) The certificate of registration supports that allegation, noting that the website includes "text, photograph(s),

8

[and] artwork." (Doc. 40-1 at 1.) Indeed, the Amended Complaint explicitly alleges that the "handgun grips at issue appear on Wicked's website." (Doc. 40 ¶ 13.) Thus, Wicked meets its burden at the pleading stage.

Defendants disagree, asserting that the website certificate "is inapplicable to and cannot protect the previously published grip designs." (Doc. 48 at 11.) That assertion is contrary to the Amended Complaint's allegations and the copyright certificate. The Court must accept Wicked's well-pleaded allegations as true and may disregard them only if they are mere legal conclusions masquerading as facts. *See Iqbal*, 556 U.S. at 680. Yet Defendants provide no legal support for their argument about the scope of a website copyright. And their assertion that the grip designs were "previously published" is a factual one, for which Defendants also provide no support. In sum, Defendants' argument is insufficient to overcome Wicked's allegations at this point. Of course, Wicked will have to prove that it complied with the registration precondition to suit if Defendants raise the issue again in a motion for summary judgment or at trial.

### 3. Originality

"[O]riginality is a constitutionally mandated prerequisite for copyright protection." *Feist Publ'ns*, 499 U.S. at 351. It is also a statutory one. *See* 17 U.S.C. § 102(a) (protecting only "original works of authorship"). Nevertheless, the requirement "is not particularly stringent." *Feist Publ'ns*, 499 U.S. at 358. It does not require novelty. Even a "minimal

9

level of creativity" is sufficient for copyright protection. *Id.* at 359. Despite the low bar for creativity, Defendants argue that the grip designs are not copyrightable because they contain elements that are not original to Wicked. The Court disagrees.

The Amended Complaint adequately alleges that the grip designs are original. While the designs draw on common themes, Wicked alleges that the arrangements, shading, angles, and the artistic style are original. These elements add at least "a modicum of creativity." *Feist Publ'ns*, 499 U.S. at 346. That is enough for the work to be copyrightable even if other aspects are not original. *See id.* at 361. Because Wicked "contributed something recognizably '[its] own'" to the designs, it sufficiently alleges that they are copyrightable. *Dream Custom Homes, Inc. v. Mod. Day Constr., Inc.*, 773 F. Supp. 2d 1288, 1302 (M.D. Fla. 2011) (Kovachevich, J.), *aff'd*, 476 F. App'x 190 (11th Cir. 2012).

Even if Wicked's allegations were inconclusive, Defendants' contentions are misplaced at the motion to dismiss stage. "Whether a work is sufficiently original to merit copyright protection is a question of fact." *Home Legend, LLC v. Mannington Mills, Inc.*, 784 F.3d 1404, 1409 (11th Cir. 2015) (addressing originality on a motion for summary judgment). So too, whether Defendants copied an aspect of the work that was original to Wicked is a fact-intensive inquiry that is not appropriate for the pleading stage. As such, courts often refuse to address originality on a motion to dismiss. *See, e.g., Magical Mile*,

510 F. Supp. 2d at 1087; *Tecnoglass, LLC v. RC Home Showcase, Inc.*, 301 F. Supp. 3d 1267, 1274 (S.D. Fla. 2017) (Scola, J.). So too here.

In sum, Wicked alleges that its designs surmount the "low bar" of originality, *Home Legend*, 784 F.3d at 1409, because they are not "utterly lacking" a "creative spark," *Feist Publ'ns*, 499 U.S. at 359. More is not required at this stage.

### B. Preemption of Wicked's State Law Claims

The Copyright Act preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a). "The exclusive rights under the Copyright Act include the right to reproduce the copyrighted work, to prepare derivative works, and to distribute copies to the public." *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1311 (11th Cir. 2001). Within the Eleventh Circuit, a claim falling within the subject matter of copyright is preempted unless it requires an "extra element" for recovery that makes the action "*qualitatively* different from a copyright infringement claim." *Bateman*, 79 F.3d at 1549 (quotation omitted). Applying this standard, Defendants argue that Wicked's state-law claims are preempted. The Court agrees and grants Defendants' motion to dismiss Counts II through V.

#### 1. Counts II and IV

Counts II and IV allege that Badaan, Cander, and Big Cat "engaged in deceptive and fraudulent [or 'unfair'] conduct by making exact copies . . . of Wicked's grip designs"

11

and selling them "as if they were Defendants' own." (Doc. 40 ¶¶ 56, 67.) Because Defendants' grips resemble Wicked's designs but are of lower quality, Wicked alleges that there is "a likelihood of consumer confusion." (*Id.* ¶ 57, 69.) That confusion will harm Wicked because Defendants' products often receive poor reviews. (*Id.*) Count II applies these facts to a claim for unfair competition under the common law of Florida, (Doc. 51 at 7), while Count IV alleges a violation of FDUTPA.

Under Florida law, a claim for unfair competition requires allegations of "deceptive or fraudulent conduct of a competitor and likelihood of consumer confusion." *Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.*, 785 F.2d 897, 914 (11th Cir. 1986). Unfair competition "goes to the question of marketing," rather than "of copying in the manufacture of a product." *Id.* at 914 (quotation omitted). Similarly, a FDUTPA claim requires allegations of a deceptive act or unfair practice. *See Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016).

Counts II and IV fail because Wicked does not allege an extra element or additional facts that make these Counts qualitatively different from a copyright claim. The FDUTPA claim in Count IV does not allege a deceptive act other than the copying and selling of Wicked's grip designs. Nor does the unfair competition claim in Count II adequately allege consumer confusion. The Amended Complaint merely asserts that Defendants selling copies of Wicked's designs will result in "consumer confusion" because "consumers may

12

purchase Defendants' cheaper grips of a lesser quality believing them to be Wicked's grips." (Doc. 40 ¶ 57.) But Wicked does not allege that Defendants used Wicked's name or used names meant to invoke Wicked's brand. Instead, it alleges that Defendants sold the products under a different brand, using their own names, and "as if they were Defendants' own." (Doc. 40 ¶ 56.) And in all the negative reviews that Wicked supplies, the consumers properly attributed their complaints to Defendants' companies, not to Wicked. (Doc. 40-18.) In short, nowhere does Wicked "allege any facts to allow the Court to draw the reasonable inference that consumer confusion would result from Defendants' use of the [grip designs]." *Strong Current Enters. Ltd. v. Affiliati Network, Inc.*, No. 20-cv-23692, 2021 WL 1383369, at *5 (S.D. Fla. Jan. 26, 2021) (Ungaro, J.) Thus, Count II fails to state a claim for unfair competition.

Moreover, without viable allegations of deceptive acts or consumer confusion, Counts II and IV do not contain an "extra element" distinguishing them from copyright claims. *Bateman*, 79 F.3d at 1549. The essence of these claims is that Defendants copied and sold Wicked's designs, and thus they "encompass rights which are equivalent to the exclusive rights of [the Copyright Act]." *Lipscher*, 266 F.3d at 1311. That Defendants passed off Wicked's designs as if they were Defendants' own does not "*qualitatively*" change that. *Bateman*, 79 F.3d at 1549. Instead, the Copyright Act preempts this type of "passing off" claim. *See Ediciones Musicales Y Representaciones Internacionales, S.A. v. San*

13

*Martin*, 582 F. Supp. 2d 1358, 1361 (S.D. Fla. 2008) (King, J.). That result is clear here because the conduct at issue in Counts II and IV "is no different from the conduct underlying [Wicked]'s copyright infringement claim[]." *Stripteaser, Inc. v. Strike Point Tackle, LLC*, No. 13-cv-62742, 2014 WL 866396, at *5 (S.D. Fla. Mar. 5, 2014) (Altonaga, J.) (reasoning that a claim alleging consumer confusion was really a preempted copyright claim); *see Pegasus Imaging Corp. v. Northrop Grumman Corp.*, No. 8:07-cv-1937, 2008 WL 5099691, at *5 (M.D. Fla. Nov. 25, 2008) (Whittemore, J.) ("[If] the only unfair or deceptive practice is the same conduct which forms the basis of the plaintiff's copyright claim, the FDUTPA claim is preempted.").

Because Wicked does not adequately allege an "extra element" to show that its unfair competition and FDUTPA claims are qualitatively different from a copyright claim, the Court concludes that Counts II and IV are preempted.

### 2. Count III

Although Count III is styled as an unfair competition claim, the allegations are identical to a copyright action. It alleges that Badaan and HB "copied the design of a unique AR-15 rifle rail cover designed and developed by Wicked" and "sold exact duplicates" of it. (Doc. 40 ¶¶ 61, 64.) It does not allege that this behavior was deceptive, involved misrepresentations, or led to consumer confusion. Instead of addressing "the question of marketing," it simply alleges "copying in the manufacture of a product." *Cont'l Homes,*

14

*Inc.*, 785 F.2d at 914 (quotation omitted). And that copying is "within the general scope of copyright" because the AR-15 grips are "original works of authorship fixed in [a] tangible medium of expression." 17 U.S.C. §§ 102(a), 301. The Copyright Act preempts such repackaged copyright claims. *See M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1494 (11th Cir. 1990) ("A claim for unfair competition based upon allegations of copying, and in the absence of proof of any element of unfair competition other than copying, is clearly pre-empted by the Act."). That is so even though Wicked does not bring a copyright claim for Defendants' use of the AR-15 rifle covers. *Cf. Lipscher*, 266 F.3d at 1311 (reasoning that even if a work is not copyrightable, it "nevertheless [may be] within the subject matter of copyright").

Even if it was not preempted, Count III fails to state a claim. As noted above, an unfair competition claim under Florida common law requires allegations of "(1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer confusion." *Whitney Info. Network, Inc. v. Gagnon*, 353 F. Supp. 2d 1208, 1212 (M.D. Fla. 2005) (Steele, J.). Count III pleads neither of these elements. It alleges mere copying without asserting that Defendants used deceptive or unfair marketing tactics or that Defendants' acts prompted confusion among consumers. And so, the Court grants Defendants' motion to dismiss Count III because it is preempted and fails to state a claim.

15

### 3. Count V

Count V is substantially similar to Count III, except that it claims a violation of FDUTPA. It alleges that Badaan and HB made "exact copies" of Wicked's AR-15 rifle cover design and sold them "as if they were Defendants' own," which amounted to "deceptive and unfair practices." (Doc. 40 ¶ 72.)

As with Count III, Count V is a copyright claim repackaged as a claim under Florida law. The reference to "deceptive and unfair practices" is a "naked assertion" that is "devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). If Defendants' acts are deceptive or unfair, it is because Wicked has underlying rights in the designs that Defendant violates by copying and selling the designs as if they were Defendants' own. But "the Copyright Act preempts a FDUTPA claim premised on allegations of copying." *See Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1354 (S.D. Fla. 2017) (Moore, C.J.). And a mechanical "reiteration of the elements of [a] FDUTPA claim is not enough to save" it from preemption. *Millennium Travel & Promotions, Inc. v. Classic Promotions & Premiums, Inc.*, No. 6:08-cv-290, 2008 WL 2275555, at *3 (M.D. Fla. June 2, 2008) (Presnell, J.). That is so because such claims seek to protect rights that are "equivalent" to "the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a); *see Lipscher*, 266 F.3d at 1313 ("Clearly the rights

16

[the plaintiff] is attempting to protect . . . are copyright rights."). Accordingly, the Court grants Defendants' motion to dismiss Count V.

## IV.   CONCLUSION

Defendants move to dismiss all Counts of Wicked's Amended Complaint. The Copyright Act preempts Counts II through V, but Count I survives because Wicked's allegations of copyright infringement are sufficient for the pleading stage. Accordingly, the following is **ORDERED:**

1. Defendants' Motion to Dismiss (Doc. 48) is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Court dismisses Counts II, III, IV, and V.

2. Defendants' request for oral argument on the Motion to Dismiss (Doc. 49) is **DENIED**.

**ORDERED** in Tampa, Florida, on June 22, 2022.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge